

U.S. Department of Justice

United States Attorney
District of Maryland
Northern Division

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND
2013 DEC 16  P 12: 42
CLERK'S OFFICE
AT BALTIMORE
BY_____ DEPUTY

Rod J. Rosenstein
United States Attorney

Judson T. Mihok
Assistant United States Attorney

36 South Charles Street
Fourth Floor
Baltimore, Maryland 21201

DIRECT: 410-209-4903
MAIN: 410-209-4800
FAX: 410-962-3091
TTY/TDD: 410-962-4462
Judson.Mihok@usdoj.gov

June 27, 2013

Scott Carter-Eldred
Assistant Federal Public Defender
Tower II, Suite 1100
100 South Charles Street
Baltimore, Maryland 21201

   Re:  United States v. Scott Wade Markle Criminal No. CCB 13-071

Dear Mr. Carter-Eldred:

This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by July 26, 2013, it will be deemed withdrawn. The terms of the agreement are as follows:

### Offense of Conviction

1.  The Defendant agrees to plead guilty pursuant to Fed. R. Crim. P. 11(c)(1)(C) to Count One of the Indictment now pending against him, which charges him with Possession of Child Pornography, in violation of 18 U.S.C. §2252A(a)(5)(B). The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court. The Defendant will also agree to sign a consent effectively admitting the Forfeiture Allegation.

### Elements of the Offense

2.  The elements of the offense to which the Defendant has agreed to plead guilty, and which the Government would prove if the case went to trial, are as follows:

  a.  That from in or about September of 2008 and continuing until on or about February 11, 2013, in Maryland, the defendant knowingly possessed material that contained at least one image

Letter to Mr. Carter-Eldred
June 27, 2013
Page 2

of child pornography; and

b. That such image or images contained on the hard drive had been transported in interstate or foreign commerce, including by computer, or that such image or images had been produced using materials that had been mailed or shipped or transported in interstate or foreign commerce by any means, including by computer; and

c. That at the time of such possession the defendant knew that such image or images contained on the hard drive constituted child pornography.

<u>Penalties</u>

3. a. The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty (with a qualifying prior conviction for an offense outlined in 18 U.S.C. § 2252A(b)(2)) is as follows: **imprisonment for not less than ten (10) years** and not more than 20 years, followed by a term of supervised release of not less than five years and not more than life and a fine of $250,000. In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

b. The defendant understands and agrees that as a consequence of his conviction for the crimes to which he is pleading guilty, he will be required to register as a sex offender in the place where he resides, where he is an employee, and where he is a student, pursuant to the Sex Offender Registration and Notification Act (SORNA), and the laws of the state of his residence. Failure to do so may subject him to new charges pursuant to 18 U.S.C. § 2250.

---

[1] Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

Letter to Mr. Carter-Eldred
June 27, 2013
Page 3

## Waiver of Rights

4. The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

a. If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

d. The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

e. If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

Letter to Mr. Carter-Eldred
June 27, 2013
Page 4

      g.     If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

      h.     By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

### Advisory Sentencing Guidelines Apply

5.     The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

6.     This Office and the Defendant understand, agree and stipulate to the Statement of Facts as set forth in Attachment A hereto which would be proved beyond a reasonable doubt and to the following applicable sentencing guidelines factors:

### Possession of Child Pornography

      a.     The base offense level is eighteen (18) pursuant to U.S.S.G § 2G2.2(a)(1).

      b.     Pursuant to U.S.S.G. § 2G2.2(b)(2), there is a two (2) level increase because the offense involved a prepubescent minor.

      c.     Pursuant to U.S.S.G. § 2G2.2(b)(2), there is a two (2) level increase because the offense involved the use of a computer.

      d.     Pursuant to U.S.S.G. § 2G2.2(b)(7)(A), there is a two (2) level increase because the offense involved more than 10 but less than 150 images of child pornography.

4

Letter to Mr. Carter-Eldred
June 27, 2013
Page 5

### Relevant Conduct–Receipt of Child Pornography

The Guidelines calculation must also take into consideration the fact that the Defendant received child pornography. USSG §1B1.2(c), as follows:

    a.    The base offense level is 22. USSG §2G2.2(a)(2).

    b    Pursuant to U.S.S.G. § 2G2.2(b)(2), there is a two (2) level increase because the offense involved a prepubescent minor.

    c    Pursuant to U.S.S.G. § 2G2.2(b)(2), there is a two (2) level increase because the offense involved the use of a computer.

    d    Pursuant to U.S.S.G. § 2G2.2(b)(7)(A), there is a two (2) level increase because the offense involved more than 10 but less than 150 images of child pornography.

### Combined Offense Level

Pursuant to USSG §3D1.2, the above-referenced USSG group. Therefore, pursuant to USSG §3D1.2, the highest offense level is 28.

### Acceptance of Responsibility

    a.    This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about his involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (vii) attempts to withdraw his plea of guilty.

    b    Thus the adjusted offense level for Count One is 25.

7.    The parties further stipulate and agree that the Defendant has a qualifying prior conviction for an offense outlined in 18 U.S.C. § 2252A(b)(2), resulting in a statutory mandatory minimum of 10 years imprisonment.

8. The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

9. This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute.

### Obligations of the United States Attorney's Office

10. At the time of sentencing, this Office will recommend a sentence of 120 months and a lifetime of supervised release pursuant to Paragraph 11. [handwritten annotations]

11. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct. Should the defendant choose to file a sentencing memorandum in this matter, the defendant agrees to file any such memorandum ten business days prior to the date of sentencing.

### Rule 11 (c) (1) (C) Plea

12. The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a sentence of 120 months and a lifetime of supervised release is the appropriate disposition of this case. This agreement does not affect the Court's discretion to impose any lawful conditions of probation or supervised release. In the event that the Court rejects this plea agreement, *either* party may elect to declare the agreement null and void. Should the Defendant so elect, he will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5).

### Waiver of Appeal

13. The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal the 120 month term of imprisonment and the lifetime of supervised release agreed to in this case, as well as whatever fine or order of restitution that may be imposed, and any issues that relate to the establishment of the advisory guidelines range. Nothing in this agreement shall be construed to prevent either the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), and appealing from any decision thereunder, should a sentence be imposed that is illegal or that exceeds the statutory maximum allowed under

the law or that is less than any applicable statutory mandatory minimum provision. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Court Not a Party

14.     The Defendant expressly understands that the Court is not a party to this agreement. The Defendant understands that the Court is under no obligation to accept this plea offer made pursuant to Rule 11(c)(1)(C). The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Forfeiture

15.     The defendant agrees to forfeit all right, title and interest in the property seized by law enforcement from his residence on February 12, 2013, including, but not limited to: one (1) Panasonic Digital Camera Model DMC-TZ1, S/N: FA6SB05180R; one Samsung Cellular Telephone Model SCH 1405, IMEI: 990001144107398; one IBM Thinkpad Laptop Computer S/N: FX-T6116; one Toshiba Laptop Computer S/N: 2B214469W; and any computers and digital as well as any property traceable to such property, or (2) that constitutes and is traceable to gross profits and other proceeds obtained, directly and indirectly, as a result of the offense in Count One. He further agrees to take whatever steps are necessary to pass clear title to those properties to the United States.

### Entire Agreement

16.     This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Addendum, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and addendum and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this letter, please sign

Letter to Mr. Carter-Eldred
June 27, 2013
Page 8

and have the Defendant sign the original and return it to me promptly.

> Very truly yours,
>
> Rod J. Rosenstein
> United States Attorney
>
> By: _____
> Judson T. Mihok
> Assistant United States Attorney

I have read this agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

12/12/13
Date

Scott Wade Markle

I am Mr. Markle's attorney. I have carefully reviewed every part of this agreement with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

12/12/13
Date

Scott Carter-Eldred

## ATTACHMENT A

The undersigned parties hereby stipulate and agree that if this case had proceeded to trial, the government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.

On or about September 9, 2005, Scott Wade Markle (MARKLE), born in 1961, was sentenced to one year and one day incarceration, to be followed by two years of supervised release, based upon his conviction for Possession of Material Containing Visual Depictions of Minors Engaged in Sexually Explicit Conduct in the U.S. District Circuit Court for the District of Maryland, Northern Division. See Case No. AMD 05 CR 0142. As a result of the conviction, the defendant was required to register as a sex offender.

On February 11, 2013 at approximately 1636 hours, a Carroll County Sheriff's Officer responded to 671 Geneva Drive, Westminster, Maryland for a report of found property. Upon arriving at the residence, the officer met with the complainant. The complainant informed the officer that at approximately 1556 hours, he was walking his dog and observed the black shoulder bag in the grass at the bottom of his driveway. The complainant informed the officer that he had opened the bag in an attempt to obtain the name of the owner. While looking through the bag, the complainant came across what he believed to be printed images of child pornography. Additionally, the bag contained additional information that identified the owner of the bag as Scott MARKLE at 666 Geneva Drive, Westminster, Maryland 21157. The officer took a closer look at the contents of the bag and observed recent mail belonging to MARKLE, the Carroll County Times (dated February 8, 2013), a student ID for Frederick Community College in MARKLE's name and a folder containing numerous printouts of suspected child pornography. The officer further observed on the folder containing the suspected child pornography the name Scott MARKLE and the address 666 Geneva

Drive, Westminster, MD 21157. It was later determined that the Frederick County Community College Identification was forged and that MARKLE was not enrolled there.

Further review of the contents of the black shoulder bag revealed that it contained approximately 100 printed images, most of which depicted minors engaged in sexually explicit conduct. By way of example, the following is a sample of the printed images found in the black shoulder bag:

1. This image depicts a nude minor male sitting on a chair with his legs spread. The minor has an erection and the camera is focused on his genitals. At the bottom of the printed image is an http that reads: http://b1.imgsrc.ru/s/sora7/4/10948104ZxH.jpg 9/9/2008

2. This image depicts a nude minor male performing anal sex upon a nude minor female, while the female is bent over and straddling a bed. The http at the bottom of this image reads: http://b1.imgsrc.ru/e/elvls/1/10994681LPA.jpg 9/12/2008

3. This image depicts a nude minor male leaning back on a bed with his genitals exposed to the camera. His penis is erect and he is pinching his genitals. The http at the bottom of this printed image reads: http://b1.imgsrc.ru/s/sora/7/4/109479545DU.jpg

4. This image depicts a nude minor male and a nude minor female lying on a bed facing the camera while they are masturbating each other. The image also has the moniker "Photo By Carl" and at the bottom of reads http://b1.imgsrc.ru/1/lords_of_magic/o/1080779DCCE.jpg. This image is a known image from the "Sabban" series which is an identified series produced in Brazil.

The bag also contained four additional images of a minor male (14-15 yo), some of which had the minor depicted him displaying his genitals in a lewd and lascivious way. These images

clearly show the head of a minor male that had been super-imposed on the images of child pornography. This minor male has been identified as a relative of MARKLE's.

On February 12, 2013, a Federal search warrant was executed at MARKLE's residence and the following items were seized: one (1) Panasonic Digital Camera Model DMC-TZ1, S/N: FA6SB05180R; one (1) Samsung Cellular Telephone Model SCH 1405, IMEI: 990001144107398; and one (1) IBM Thinkpad Laptop Computer S/N: FX-T6116; Toshiba Laptop Computer S/N: 2B214469W. MARKLE was interviewed and indicated that he had printed the child pornography images years ago after he had been released from prison and while he was going through a difficult time. MARKLE indicated that he used a camera to take pictures of the images and upload them to his computer so he would have them on his computer since he did not have internet access at his residence. MARKLE also acknowledged that he had created the images of the minor male relative by superimposing his head onto the images of child pornography.

In total, there were over 10 but less than 150 images of children engaged in sexually explicit conduct. The depictions included images of prepubescent children (under the age of 12) engaged in sexually explicit conduct, and had been downloaded from the internet and therefore, had traveled in interstate or foreign commerce.

I have read this statement of facts, and carefully reviewed it with my attorney. I acknowledge that it is true and correct.

12-12-13
Date

Scott Wade Markle

3